**THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**TWENTY-FIRST JUDICIAL CIRCUIT OF MISSOURI**

| | |
|---|---|
| THE STATE OF MISSOURI ex rel. ERIC S. SCHMITT,  *Plaintiff*,  v.  SAM PAGE, et al.  *Defendants*. | No. 21SL-CC03334 |

**STATE OF MISSOURI'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AGAINST THE ENFORCEMENT OF ST. LOUIS COUNTY'S MASK MANDATE**

# INTRODUCTION

On July 26, 2021, Defendants Sam Page, Dr. Faisal Khan, and the St. Louis County Department of Public Health (along with County Counselor Beth Orwick, the "St. Louis County Defendants") imposed a county-wide mask mandate on the residents of St. Louis County. Ex. A, § III.1 ("Mask Mandate"). This sweeping mandate included virtually all residents, both vaccinated and unvaccinated, and all children over four years old; and it applied to schools, places of worship, businesses, public transportation, and virtually all other public spaces. *Id.* The next day, July 27, 2021, the St. Louis County Council voted to terminate the Mask Mandate by a vote of five to two. But the following morning, Page and Dr. Khan publicly stated that they would ignore the County Council's vote and continue to enforce their now-defunct Mask Mandate.

Page and Khan's refusal to withdraw their Mask Mandate is an act of stunning defiance of state law. The Missouri General Assembly just passed a statute, effective June 15, 2021, for the very purpose of preventing such unilateral restrictions imposed by county health officers and county executives. Section 67.265.2, RSMo, explicitly authorizes the St. Louis County Council to "terminate" any public health order issued by the county executive or county health officer, at any time, "upon a simple majority vote of the body." § 67.265.2, RSMo. And that is exactly what the County Council did yesterday. Under the statute's plain terms, the Mask Mandate is now defunct. Defendants are bound by the plain and unambiguous terms of this state law, yet they wrongly insist otherwise. This Court should promptly enjoin them to comply with state law.

2

## FACTUAL BACKGROUND

I.  **St. Louis County's COVID-19 Restrictions and the Passage of HB 271.**

After a year of lockdowns, mask mandates, and other restrictions on personal, religious, and economic liberty imposed on the residents of St. Louis County, on May 14, 2021, Defendant Dr. Faisal Khan lifted all COVID-19 orders and related restrictions. *See* Rescission of St. Louis County Department of Public Health 2019 Novel Coronavirus ("COVID-19") Reopen STL Order (May 14, 2021), https://bit.ly/3x4Lz1j.

Meanwhile, the controversial nature of such sweeping restrictions—and the unilateral manner in which they were sometimes imposed, including in St. Louis County—led the Missouri General Assembly to enact House Bill 271 (2021) by overwhelming margins of 147-2 in the Missouri House and 29-3 in the Missouri Senate. *See* Journal of the House, May 12, 2021, 2721-2722; Journal of the Senate, May 12, 2021, 1719-1720.[1] That law, codified at § 67.265, RSMo, "requires local leaders to be more transparent in their reasoning and accountable for their decisions when it comes to public health orders." Press Release, Missouri Governor Michael L. Parson, Governor Parson Signs HB 271 Regarding Local Public Health Orders and Vaccine Passports (June 15, 2021), https://bit.ly/3iaeMUd.  HB 271 contained an emergency clause that made new § 67.265, RSMo, effective upon its passage and approval.  HB 271 § B, 101st Gen. Assemb., Reg. Sess. (Mo. 2021).  Thus, § 67.265 became effective on June 15, 2021.

---

[1] The Court may take judicial notice of the official House and Senate Journals. *Bullington v. State*, 459 S.W.2d 334, 338 (Mo. 1970); *Brown v. Morris*, 290 S.W.2d 160, 163 (Mo. banc 1956).

HB 271 strikes a balance between the need for public health orders to prevent the spread of communicable diseases, like COVID-19, and the need for transparency and accountability in restricting Missourians' fundamental freedoms. And it strikes that balance by subjecting any order—meaning "a public health order, ordinance, rule, or regulation issued by a political subdivision, including by a health officer, local public health agency, public health authority, or the political subdivision's executive," § 67.265.1, RSMo—to termination upon "a simple majority vote" of "[t]he governing bod[y] of the political subdivision issuing" those orders, § 67.265.2, RSMo.

Section 67.265.1(1), RSMo, imposes further limits on any public health orders issued during an "emergency declared pursuant to chapter 44" that "directly or indirectly closes, partially closes, or places restrictions on the opening of or access to any one or more business organizations, churches, schools, or other places of public or private gathering or assembly" or "that prohibits or otherwise limits attendance at any public or private gatherings." Such orders expire no later than thirty days after issuance, unless "the political subdivision's governing body" extends the order or approves a similar one. § 67.265.1(1), RSMo. There is an emergency declaration in place concerning COVID-19, *see* Executive Order No. 21-07 (Mar. 26, 2021).

**II.     The County Defendants Impose a New Mask Mandate.**

On July 26, 2021, Dr. Khan issued the St. Louis County Department of Public Health 2019 Novel Coronavirus ("COVID-19") Face Covering Order (the "Mask Mandate") (attached as Exhibit A to the Affidavit of Jeff P. Johnson, filed with this Motion, and also available at https://stlcorona.com/dr-pages-messages/public-health-orders/all-

4

public-health-orders-archives/face-covering-order/) (hereinafter "Ex. A"). The Mask Mandate was a response to a perceived threat to public health from COVID-19, specifically the delta variant of the virus. *See* Ex. A, § II ("The intent of this order is to reduce the transmission of COVID-19."). The Mask Mandate claimed that it would not "directly, or indirectly, close, partially close, or place restrictions on the opening of or access to any business organization, church, school, or any other place of public or private gathering or assembly," and that it would "not, directly or indirectly, require any business organization, church, school, or owner, operator, or host of a place of public or private gathering or assembly to restrict, limit, or otherwise refuse access to any individual." Ex. A, § I.A.

As for the Mask Mandate's terms, it provided that, with some limited exceptions not relevant here, all individuals over the age of five must wear a "Face Covering"—*i.e.*, a mask covering a person's nose and mouth—if they are "in indoor and enclosed public buildings and spaces and public transportation vessels in St. Louis County." Ex. A, § III.1. That included "all indoor and enclosed spaces other than private dwellings or private transportation vessels." *Id.* The Mask Mandate then provided that the St. Louis County Counselor could "seek emergency injunctive relief or other civil relief to enforce" the mandate. Ex. A, § IV.

Missouri then filed a Petition seeking a declaration that the Mask Mandate is invalid, an injunction barring its enforcement, and a declaration that the Mask Mandate is subject to § 67.265, RSMo, and not in effect under § 67.625.4, RSMo. *See* Pet. at 35–37.

### III. The County Council Terminates the Mask Mandate.

5

The day after the Mask Mandate went into effect, the St. Louis County Council—the governing body of St. Louis County, *see*, *e.g.*, ST. LOUIS, MO., CHARTER COMMISSION OF 2019 § 2.180(14)—held a meeting where it considered, *inter alia*, whether to terminate the Mask Mandate. *See generally St. Louis County Council Regular Meeting*, YOUTUBE (July 26, 2021), https://www.youtube.com/watch?v=naLwKEx_OCY.[2]

Dr. Khan spoke about the Mask Mandate at the meeting. He confirmed that the order applied to "[a]ll businesses and residences in St. Louis County." *Id.* at 44:28–32. But when asked about enforcement, Khan tried to duck the question—saying, for example, the County did not intend to police businesses, refusing to engage on what he viewed as legal issues, or directing councilmembers to the County Counselor. Eventually, however, he was pressed to give an answer. In doing so, he conceded that businesses would have to enforce the Mask Mandate by excluding patrons and customers who are not masked. For example, he was asked if, in his opinion, "a Schnucks or a restaurant has an obligation to police or enforce the order—is that a fair characterization?" *Id.* 44:55–45:07 (Councilman Trakas). Khan's response: "Yes, sir." *Id.* at 45:07; *see also id.* at 39:25–39:40 (Councilman Harder: "If someone walks into a Schnucks, and is unmasked, who's responsibility is it to be masked? Is it the business owner or the person themselves?" Khan:

---

[2] The Court may take judicial notice of the recording of the St. Louis County Council's meeting on July 27, 2021. *See, e.g., Wrenn v. City of Kansas City*, 908 S.W.2d 747, 750 n.5 (Mo. App. W.D. 1995) (taking judicial notice of "the audiotaped recording of the … hearing before the Board," because "the facts to be noticed appear with such certainty that controversy is unlikely, and because the proceeding is clearly interconnected with this one"). For the Court's convenience, the State is preparing a certified transcript of the relevant portions of the meeting, which will be filed with the Court as soon as possible.

"I would suggest both, sir."); *id.* at 44:40–44:55 (Councilman Trakas: "In your opinion, it was up to both your individual and . . . a restaurant or a Schnucks to police whether or not the mask mandate was adhered to, did I hear that correctly?" Khan: "Yes, sir."). Khan then doubled-down on his understanding that business proprietors would be required to enforce the Mask Mandate upon their customers or patrons:

> Councilman Trakas: "I'm interested in whether or not you expect a Schnucks or restaurant to enforce [the] order?"
>
> Khan: "Yes."
>
> Councilman Trakas: "In doing so, are you not imposing upon a Schnucks or a restaurant an obligation to enforce your order?"
>
> Khan: "Yes."

*Id.* at 46:00–46:21.

Councilman Fitch publicly said that, in closed session, the County Counselor informed him that enforcement would work as follows: People would report to DPH if a person was violating the Mask Mandate; DPH would go to the County Counselor's office and ask the Counselor to enforce the Mask Mandate; and the County Counselor would then get an injunction against the individual who violated the order mandating compliance and subjecting the individual to contempt proceedings for future violations. *Id.* at 49:15–50:40.

The County Council voted to terminate the Mask Mandate by a vote of five to two. *See id.* at 3:26:20–28:45.

**IV.     The St. Louis County Defendants Defy State Law and the Council's Vote.**

Notwithstanding the Council's vote to terminate the Mask Mandate, the next day, Page and Khan defiantly insisted that the Mask Mandate is still in effect. *See*, *e.g.*, Annika

7

Electronically Filed - St Louis County - July 28, 2021 - 05:00 PM

Merrilees, *Page Says St. Louis County Mask Mandate Stands, Despite Council's Vote to Overturn*, ST. LOUIS POST-DISPATCH (July 28, 2021), https://bit.ly/3ydmKRY ("Page on Wednesday said that the court will determine the status of the mask mandate, and 'until then, the law stands'"); Chris Regnier, *St. Louis County Mask Mandate in Limbo After Vote*, FOX2 NOW (July 28, 2021), https://bit.ly/3fpF1V5 ("While the County Council voted to end the mandate . . . , County Executive Dr. Sam Page says it is still in effect."); *see also* Press Release, St. Louis Count Department of Public Health, *St. Louis County COVID-19 Update* (July 28, 2021), https://bit.ly/2VilQoC ("The Department of Public Health has no comment on what comes next regarding the legal status of the public health order on masking. However, we are very clear on the science and the recommendations and firmly stand by the urgency and necessity of increasing mask compliance in St. Louis County.").[3]

On July 28, 2021, Missouri amended its petition to seek a declaration that that St. Louis County's Mask Mandate was terminated per the terms of § 67.265.2, RSMo, and moved for this Temporary Restraining Order and Preliminary Injunction.

## ARGUMENT

Missouri Supreme Court Rule 92.02 governs the issuance of temporary restraining orders and preliminary injunctions. Granting a temporary restraining order requires a showing of "irreparable injury, loss, or damage will result in the absence of relief." Mo.

---

[3] The out-of-court statements of Page and Khan are admissible against them as statements of a party opponent. *State v. Jones*, 779 S.W.2d 668, 669 (Mo. App. E.D. 1989). They also fall within the hearsay exception for statements of intention, not statements of fact. *See*, *e.g.*, *Coon v. Am. Compressed Steel, Inc.*, 207 S.W.3d 629, 635 (Mo. App. W.D. 2006).

Sup. Ct. R. 92.02(a)(1). Moreover, "[w]hen considering a motion for a preliminary injunction," Missouri courts "should weigh '[1] the movant's probability of success on the merits, [2] the threat of irreparable harm to the movant absent the injunction, [3] the balance between this harm and the injury that the injunction's issuance would inflict on other interested parties, and [4] the public interest.'" *State ex rel. Dir. of Revenue v. Gabbert*, 925 S.W.2d 838, 839 (Mo. banc 1996) (quoting *Pottgen v. Missouri State High Sch. Activities Assoc.*, 40 F.3d 926, 928 (8th Cir. 1994)).

**I.** **The State Is Likely To Prevail on Its Claim That St. Louis County's Mask Mandate Has Been Terminated Under § 67.265.2, RSMo, by the Vote of the County Council.**

"The likelihood of success on the merits is '[t]he most important of the [preliminary-injunction] factors.'" *Craig v. Simon*, 980 F.3d 614, 617 (8th Cir. 2020) (per curiam) (quoting *Shrink Mo. Gov't PAC v. Adams*, 151 F.3d 763, 764 (8th Cir. 1998). Here, the State is likely to succeed on its claim that the continued enforcement of the Mask Mandate violates state law, including Section 67.265.2, RSMo, because St. Louis County's governing body has terminated that Mask Mandate by a majority vote.

**A.** **Section 67.265.2 authorizes the County Council to terminate public health orders like the Mask Mandate at any time by majority vote.**

In the most recent legislative session, the General Assembly adopted H.B. 271, effective June 15, 2021, which enacted Section 67.265 of the Missouri Revised Statutes. That Section specifically authorizes the governing body of any political subdivision in Missouri—here, the St. Louis County Council—to terminate any public health order issued by the county's health officer or its county executive by a simple majority vote.

9

Section 67.265.2, RSMo, states: "***The governing bodies of the political subdivisions issuing orders under this section shall at all times have the authority to terminate an order issued or extended under this section upon a simple majority vote of the body***." § 67.265.2, RSMo.  The statute places no further qualification on the authority of a political subdivision's governing body—it may terminate any public health "order" by "a simple majority vote of the body." *Id.*

The statute defines "order" broadly and clearly.  Section 67.265.1 provides: "For purposes of this section, the term **'order'** shall mean [1] ***a public health order***, ordinance, rule, or regulation [2] ***issued by a political subdivision, including by a health officer***, local public health agency, public health authority, or the political subdivision's executive, as such term is defined in section 67.750, [3] ***in response to an actual or perceived threat to public health for the purpose of preventing the spread of a contagious disease***." § 67.265.1, RSMo (first emphasis in original).  Thus, a "public health order" that is "issued by … a health officer," is subject to review and termination by the governing body of the subdivision, so long as the order was issued "in response to an actual or perceived threat to public health for the purpose of preventing the spread of contagious decision." *Id.*

St. Louis County's Mask Mandate plainly satisfies this definition of "order." *Id. First*, it is a "public health order," *id.*, because it relates to public health and it repeatedly identifies itself as an "Order." Ex. A, at 1.  *Second*, it was "issued by … a health officer" of a political subdivision, because it is signed by Dr. Faisal Khan, in his official capacity as the Director of the St. Louis County Department of Health.  Ex. A, at 8; *see also* Ex. A, at 1 (stating that "[t]he Director of DPH is the 'local health authority'" for St. Louis County

"under 19 CSR 20-20.050(1)," and describing Dr. Khan as both "a state **health officer**" and a "county **health officer**") (emphases added). *Third*, St. Louis County's Mask Mandate was plainly issued "in response to an actual or perceived threat to public health for the purpose of preventing the spread of contagious disease." § 67.265.1, RSMo. The Order itself states that COVID-19 is a "contagious … disease," Ex. A, at 1; it describes the threat to public health of COVID-19, focusing on the delta variant, in detail, *id.* at 2-3; and it explicitly states that the Mask Mandate is intended to prevent the spread of contagious disease. *Id.* at 6 ("The intent of this Order is to reduce the transmission of COVID-19, including variants thereof…"); *see also id.* at 3-5. Thus, St. Louis County's Mask Mandate plainly satisfies the definition of "order" in Section 67.265.1.

Thus, the Mask Mandate is an "*order* issued … under this section," § 67.265.2, RSMo, and it may be "terminate[d]" at any time by "a simple majority vote of the governing body" of St. Louis County. *Id.* (providing that the governing body's authority to "terminate" a public health order applies "at all times"). It is well established that the St. Louis County Council is the "governing body" of St. Louis County. *See* St. Louis County Charter 2020,[4] § 2.010 ("All legislative power of the county shall be vested in the council"); *id.* § 2.180(14) (providing that "the council shall have … the power to … [e]xercise all powers and duties now or hereafter conferred upon … county governing bodies"); *see also, e.g., State ex rel. St. Louis County v. Jones*, 498 S.W.2d 294, 296 (Mo.

---

[4] The Court may take judicial notice of the contents of the St. Louis County Charter. *See* MO. CONST. art. VI § 18(j); *see also, e.g., Tonkin v. Jackson Cnty. Sys. Comm'n*, 599 S.W.2d 25, 31 (Mo. App. W.D. 1980) ("The trial court and this court may take judicial notice of the Jackson County Charter.") (citing MO. CONST. art. VI § 18(j)).

App. 1973) (noting that "the St. Louis County Council" is "the governing body of the County"); *Corbett v. Sullivan*, 353 F.3d 628, 629 (8th Cir. 2003) ("The St. Louis County Council is the governing body of St. Louis County."); § 67.030, RSMo (providing that "the governing body of each political subdivision" is the entity that has authority to alter, revise, increase, or decrease the subdivision's budget, which is the St. Louis County Council). Thus, "at all times," the St. Louis County Council had and has authority to "terminate" the Mask Mandate by "simply majority vote of the body." § 67.265.2, RSMo.

And that is exactly what the St. Louis County Council did. On July 27, 2021, the day after the Mask Mandate issued, the County Council voted to terminate the Mandate in its entirety by a vote of 5-2. *See supra* Statement of Facts, Part III; *St. Louis County Council Regular Meeting*, YOUTUBE (July 26, 2021), https://www.youtube.com/watch?v=naLwKEx_OCY at 3:26:20–28:45. Accordingly, the St. Louis County Mask Mandate has been "terminate[d]" under Section 67.265.2, and it is no longer in effect.

Nevertheless, on July 28, 2021, Defendants Page and Khan continued to state publicly that the Mask Mandate remains in effect and would be enforced. *See supra*, Statement of Facts, Part IV. Those public statements inevitably create the widespread perception that residents of St. Louis County *must* comply with the Mask Mandate. Indeed, the Order itself provides for broad enforcement authority vested in the St. Louis County Counselor. Ex. A, at 7 ("The St. Louis County Counselor can seek emergency injunctive relief or other civil relief to enforce any provision of this Order."). Defendants' stated

Electronically Filed - St Louis County - July 28, 2021 - 05:00 PM

intent to continue imposing the defunct Mask Mandate on citizens, places of worship, businesses, and other organizations in St. Louis County is contrary to the law of Missouri.

**B. The Mask Mandate identifies no authority that would allow it to survive the 5-2 termination vote by the St. Louis County Council.**

The Order recites that it supposedly "does not, directly, or indirectly, close, partially close, or place restrictions on the opening of or access to any business organization, church, school, or any other place of public or private gathering or assembly…" Ex. A, at 1. This statement evidently attempts to remove the Order from the coverage of § 67.265.1(1), which provides that a public health order issued during an emergency shall expire within 30 days, unless ratified by majority vote of the governing body, if that order "directly or indirectly closes, partially closes, or places restrictions on the opening of or access to any one or more business organizations, churches, schools, or other places of public or private gathering or assembly…." § 67.265.1(1), RSMo.

For purposes of this motion, this statement is beside the point. Unlike Section 67.265.1(1), the County Council's authority under Section 67.265.2 is not limited to orders that directly or indirectly close or place restrictions on access to churches, schools, businesses, and other organizations. § 67.256.2, RSMo. Instead, Section 67.265.2 explicitly authorizes the governing body of St. Louis County to "terminate" *any* "order issued … under this section," *id.*—not just those that close or restrict access to churches and businesses under *subparagraph 1(1)* of the section. *Id.* The definition of "order" in "this section"—*i.e.*, the definition of "order" at the beginning of § 67.265.1—is broader than the subset of such "orders" discussed in Section 67.265.1(1). *See, e.g., Gross v.*

13

*Parson*, No. SC 98619, -- S.W.3d --, 2021 WL 2668318, at *4 (Mo. banc June 29, 2021) ("[T]o determine a statute's plain and ordinary meaning, the Court looks to a word's usage in the context of the entire statute, and statutes *in pari materia*.") (citations omitted); *R.M.A. ex rel. Appleberry v. Blue Springs R-IV Sch. Dist.*, 568 S.W.3d 420, 429 (Mo. banc 2019). Thus, the County Council's authority to terminate public health orders under Section 67.265.2 is not limited to the limited subset of orders described in Section 67.265.1(1), but applies to all orders that meet the broader definition of "order" in Section 67.265.1.

In any event, the Mask Mandate's recitals that it supposedly does not "directly, or indirectly, close, partially close, or place restrictions on the … access to any business organization, church, school, or any other place of public or private gathering or assembly," and that it supposedly "does not, directly or indirectly, require any business organization, church, school, or … place of public or private gathering or assembly to restrict, limit, or otherwise refuse access to any individual," Ex. A, at 1, are plainly incorrect.  The Mask Mandate states that "Face Coverings are required to be properly worn by all individuals ages 5 and older while in indoor and enclosed public buildings and public transportation vessels in St. Louis County." *Id.* at 6, § III.1.  This Mask Mandate plainly "places restrictions on … access to … places of public or private gathering," § 67.265.1(1), because the Mandate prohibits persons over age 5 who are not wearing masks to go into them.  Ex. A, at 6, § III.1.  The plain meanings of "restrict" and "access" are found in the dictionary. *See, e.g., Cox v. Dir. of Revenue*, 98 S.W.3d 548, 550 (Mo. 2003) ("This Court ascertains the legislature's intent by considering the plain and ordinary meaning of the words in the statute.  Absent a definition in the statute, the plain and ordinary meaning is derived from

14

the dictionary."). To "restrict" means "to set bounds or limits to," as "to check free activity, motion, progress, or departure of," WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1937 (2002); and "access" means "permission, liberty, or ability to enter, approach, communicate with, or pass to and from," *id.* at 11. By prohibiting persons without masks from entering public spaces, the Mask Mandate plainly "set[s] bounds or limits to" and "check[s] free activity" of St. Louis County residents in their "liberty" and "ability to enter" public and private gathering spaces. *Id.* at 11, 1937. The Mask Mandate's recital that it supposedly does not restrict access to public places, therefore, contradicts Missouri law.

For the foregoing reasons, Defendants' actions are plainly unlawful, and the State is likely to prevail on its allegation that the Mask Mandate violates Section 67.265, RSMo.

## II. The Other *Gabbert* Factors Favor Entering Injunctive Relief.

The other three *Gabbert* factors include "[2] the threat of irreparable harm to the movant absent the injunction, [3] the balance between this harm and the injury that the injunction's issuance would inflict on other interested parties, and [4] the public interest.'" *Gabbert*, 925 S.W.2d at 839. These factors also favor the State.

>    **A. Defendants' defiance of State law and their unlawful infringement on St. Louis County residents' liberty inflicts irreparable injury on the State.**

The defiance to a duly enacted state statute by the county executive and the director of the Department of Health inflict *per se* irreparable injury on the State. "Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citing *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*,

15

434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)).  When the State is blocked from implementing its statutes, "the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its law."  *Planned Parenthood of Greater Texas Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013); *Coalition for Economic Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997).  By nullifying the plain meaning of Section 67.265.2 in St. Louis County, Defendants inflict ongoing irreparable harm on the State and its sovereign interest in seeing its laws obeyed and enforced.

In addition, the Attorney General, acting on behalf of the State, has *parens patriae* standing to represent the interests of the residents, churches, businesses, and other organizations in St. Louis County who are being subjected to the defunct and unlawful Mask Mandate.  *See, e.g.,* § 27.060, RSMo; *see also Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 607 (1982) (holding that a State has a *parens patriae* interest in preventing an injury to a "substantial segment of its population," especially where "the injury is one that the State, if it could, would likely attempt to address through its sovereign lawmaking powers").  The unlawful Mask Mandate restricts the personal liberty and freedom of action of St. Louis County's 1.1 million residents, and this deprivation of the fundamental freedom of action itself constitutes an irreparable injury that the State may vindicate.  "The United States Supreme Court has held being subject to an unconstitutional statute, 'for even minimal periods of time, unquestionably constitutes irreparable injury.'"  *Rebman v. Parson*, 576 S.W.3d 605, 612 (Mo. banc 2019) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)).  The same is true of being subject to an unlawful mandate.

Case: 4:21-cv-00948 Doc. #: 9 Filed: 07/30/21 Page: 17 of 20 PageID #: 537

### B. An injunction preventing enforcement of the unlawful Mask Mandate will impose no cognizable injury on Defendants.

By contrast, an injunction preventing the enforcement of the Mask Mandate, which has been lawfully terminated by majority vote of the St. Louis County Council, will impose no cognizable injury on Defendants. *See Gabbert*, 925 S.W.2d at 839 (directing the court to balance the irreparable harm to plaintiffs against "the injury that the injunction's issuance would inflict on other interested parties"). Defendants have no valid interest in enforcing a mandate on their citizens that has been terminated under state law. *See, e.g., Make Liberty Win v. Ziegler*, 478 F.Supp.3d 805, 812 n.6 (W.D. Mo. 2020) (holding that "a governmental entity 'has no legitimate interest in enforcing an unconstitutional ordinance'") (quoting *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006)).

### C. The public interest favors an injunction against Defendants' plainly unlawful actions.

Finally, the public interest decisively favors an injunction here. The public interest is most directly reflected in the decisions of two democratically elected, legislative bodies: the Missouri General Assembly and the St. Louis County Council. As a duly enacted state statute, Section 67.265 "is in itself a declaration of public interest and policy." *Virginian Ry. Co. v. Sys. Fed'n No. 40*, 300 U.S. 515, 552 (1937). This point applies with particular force, given that HB 271 was based by near-unanimous majorities in both the Missouri House and the Missouri Senate. Likewise, the St. Louis County Council's supermajority vote to terminate the Mask Mandate is a declaration of the will of the people and the public policy of St. Louis County. *See id.* The actions of these two democratic bodies reflect the

17

public interest, not the unilateral actions of executive officials whose proper role is to enforce the law, not to make it. Further, "[t]he loss of [constitutional] freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod*, 427 U.S. at 373. For these reasons, the public interest favors invalidating the Defendants unlawful action and enjoining them from enforcing the invalid, defunct, and unconstitutional Mask Mandate.

## CONCLUSION

For the reasons stated, the Court should enter a temporary restraining order and preliminary injunction preventing the St. Louis County Defendants—County Executive Sam Page, DPH Director Dr. Faisal Khan, County Counselor Beth Orwick, and St. Louis County Department of Public Health—from taking any action to enforce the St. Louis County Department of Public Health's 2019 Novel Coronavirus ("COVID-19") Face Covering Order dated July 26, 2021.

| | |
|---|---|
| Dated: July 28, 2021 | Respectfully submitted,<br><br>**ERIC S. SCHMITT**<br>**Attorney General of Missouri**<br><br>*/s/ Justin D. Smith*<br>Justin D. Smith, #63253MO<br>Deputy Attorney General for Special Litigation<br>D. John Sauer, #58721MO<br>Jeff P. Johnson, #73249MO<br>Michael E. Talent, #73339MO<br>Missouri Attorney General's Office<br>Post Office Box 899<br>Jefferson City, MO 65102<br>Tel: (573) 751-0304<br>Fax: (573) 751-0774<br>Justin.Smith@ago.mo.gov<br>*Counsel for Plaintiff* |

## CERTIFICATE OF SERVICE

I hereby certify that, on July 28, 2021, a true and correct copy of the foregoing was filed with the Court's electronic filing system to be served by electronic methods on counsel for all parties entered in the case, and that a true and correct copy was also served by electronic mail and first-class mail upon counsel for the County Defendants.

<i><u>/s/ Justin D. Smith</u></i>

Electronically Filed - St Louis County - July 28, 2021 - 05:00 PM